Barahona v Marcus (2022 NY Slip Op 01731)





Barahona v Marcus


2022 NY Slip Op 01731


Decided on March 15, 2022


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: March 15, 2022

Before: Gische, J.P., Kern, González, Shulman, Higgitt, JJ. 


Index No. 805277/14 Appeal No. 15521 Case No. 2020-04637 

[*1]Debora Barahona, as Administrator of the Estate of Damian Fortune, Deceased, in Her Capacity as Guardian of Daymia Elizabeth Fortune, Plaintiff-Respondent,
v
Sergiu Marcus, M.D., et al., Defendants, Long Island Ambulatory Surgery Center, LLC et al., Defendants-Appellants.


Schiavetti, Corgan, DiEdwards, Weinberg & Nicholson, LLP, New York (Samantha E. Quinn of counsel), for Long Island Ambulatory Surgery Center, LLC, appellant.
Pollack, Pollack, Isaac & DeCicco, LLP, New York (Brian J. Isaac of counsel), for respondent.



Order, Supreme Court, New York County (Joan A. Madden, J.), entered on or about May 13, 2020, which, insofar as appealed from as limited by the briefs, denied the motion of defendant Long Island Ambulatory Surgery Center, LLC (LIASC or defendant) for summary judgment on the direct medical malpractice claim as against it, unanimously affirmed, without costs.
The record presents issues of material fact as to whether LIASC departed from good and accepted medical practice by permitting plaintiff's decedent to undergo surgery at its facility that did not have the equipment to convert to general anesthesia and by lacking a plan for transferring patients to a facility that could provide general anesthesia. Defendant is an ambulatory surgical center located on Long Island. Plaintiff was scheduled to have eye surgery to correct a detached retina at defendant's facility. The surgery was planned to take place while plaintiff was under Monitored Anesthetic Care (MAC). In the middle of the surgery, however, plaintiff became agitated, and the procedure was stopped. Plaintiff needed to be placed under general anesthesia so that the surgery, which was well underway, could be completed. Defendant did not have equipment to convert to general anesthesia. Nor was there a plan in place for an immediate transfer to a facility that could administer general anesthesia. The surgeon spent 1-2 hours trying to find such a facility and eventually co-defendant, New York Eye and Ear infirmary (NYEEI), located in Manhattan, agreed to take plaintiff. No ambulances were available, so that plaintiff was transported to Manhattan with a car service. While the surgery was proceeding at NYEEI, the plaintiff suffered cardiac arrest and died during his transfer to another hospital. Although defendant's experts conclude that the need to convert to general anesthesia in the middle of the surgery was not reasonably foreseeable, plaintiff's expert offered a conflicting opinion on that issue. Moreover, plaintiff's expert was qualified to render this opinion notwithstanding that the expert was anonymous (CPLR 3101[d][1][i]; see Vega v Mount Sinai-NYU Med. Ctr. & Health Sys., 13 AD3d 62, 63 [1st Dept 2004]), from out of state (CPLR 2309[c]; see Ortiz v City of New York, 129 AD3d 611, 612 [1st Dept 2015]), and did not purport to have worked at a New York ambulatory surgery center (see Almeyda v Concourse Rehabilitation & Nursing Ctr., Inc., 195 AD3d 437, 437 [1st Dept 2021]).
Issues of fact also exist as to whether the inability to timely convert to general anesthesia, whether by having equipment available or a plan with a nearby facility, proximately caused decedent's death. Although there was evidence in the record supporting defendant's contention that decedent's condition was stable upon his arrival at a fully equipped facility and that his cardiac arrest was caused by a preexisting cardiovascular condition, plaintiff's expert opined that LIASC's departures caused the decedent to be[*2]"subjected to multiple hours of stress to his body, including his heart," and that this stress "was directly and substantially medically causally related to [his] death." The expert's opinion that the delay in treatment substantially diminished the decedent's chance of a better outcome was sufficient to raise an issue of fact as to proximate cause (see Hernandez v New York City Health & Hosp. Corp., 129 AD3d 532, 532 [1st Dept 2015], 1B NYPJI3d: 150 at 87 [2022]). 
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: March 15, 2022